### J. T. STEPHENS V. MARY A. WALLACE ET AL.

#### No. 690.

1. **Death by Wrongful Act—Evidence.**—It appeared in an action of damages for death by wrongful act, that the deceased, in a personal difficulty with defendant's father, and after being attacked by the father with a knife, shot and wounded the father, and while attempting to flee, after having run about fifty yards, was himself shot and killed by the defendant. *Held*, that the facts warranted a verdict for plaintiffs.

2. **Same.**—In this case a witness for plaintiffs, testifying by deposition, stated what the father had said to him (witness) as to the cause of his difficulty with the deceased, and this answer and part of the deposition was offered in evidence by the defendant, and excluded by the court. On appeal by the son alone, *Held*, that the ruling was correct, as the matter afforded no justification for the killing by the son under the state of facts disclosed in the preceding head note.

3. **Same—Justifiable and Wrongful Homicide—Interference in Another's Difficulty.**—See the opinion for a charge held to correctly state the rules of law as to wrongful and justifiable homicide in a case where the defendant interfered in a personal difficulty wherein the deceased, under different phases of the evidence, may have been in the right or may have been in the wrong.

APPEAL from Johnson. Tried below before Hon. J. M. HALL.

*Poindexter & Padelford* and *N. A. Stedman*, for appellant.—1. Where a plaintiff takes the deposition of a witness, and the defendant has propounded cross-interrogatories to the witness, which he has answered, the defendant has the right to read in evidence all of the answers of the witness to the direct interrogatories, even though the answers which are responsive to the direct interrogatories could not have been legally elicited by defendant in the first instance. Rev. Stats., art. 3740; Hadley v. Upshaw, 27 Texas, 547; Weil v. Silverstone, 6 Bush, Ky.

2. The charge is erroneous in making J. T. Stephens responsible for the wrongful acts of L. H. Stephens, by ignoring the knowledge or want of knowledge of J. T. Stephens of the purpose with which his father provoked a difficulty, if he wrongfully provoked it, with Dr.

Wallace, when the law is, that the criterion for determining the guilt of the slayer who acts in the defense of the person of another is his own intent, and not the wrongful intent of him in behalf of whom he kills, unless he knows of such wrongful intent. Sneed v. The State, 29 Texas Crim. App., 236; Laens v. The State, 21 S. W. Rep.

*M. W. McKnight, J. N. English,* and *O. T. Plummer,* for appellees.

1. The deposition of a witness is subject to the same rules as the evidence of a witness would be testifying in person before the court. The evidence sought to be introduced related alone to L. H. Stephens, and was self-serving and not admissible.

If the court erred in excluding the evidence, the error was alone to the prejudice of L. H. Stephens. He recovered judgment against appellees, and the same is final as to him. He is now eliminated from this suit. Whatever prejudice may have resulted to L. H. Stephens in excluding the testimony can not be made available.

2. The verdict is authorized by the evidence; the justice of the case has been reached, and the judgment should not be reversed even if the charge was not technically exact in every respect—no special charge having been asked covering the defect complained of. Railway v. Larkin, 64 Texas, 454; Railway v. Lake, 64 Texas, 654; Hardy v. De Leon, 5 Texas, 211; Jones v. Thurmond, 5 Texas, 318; McClane v. Rogers, 42 Texas, 214; Bennett v. Frary, 55 Texas, 145; Railway v. Hardy, 61 Texas, 230; Erwin v. Bowman, 51 Texas, 514; Dotson v. Moss, 58 Texas, 152; City of Galveston v. Morton, 58 Texas, 409.

LIGHTFOOT, CHIEF JUSTICE.—The statement of the case in appellant's brief is concurred in by appellees, and is adopted, as follows· This suit was filed January 6, 1885, by Mary A. Wallace, and by J. R. Wallace, C. B. Wallace, and W. B. Wallace, minors, by Mary A. Wallace, next friend, against L. A. Stephens and J. T. Stephens. On December 8, 1890, the petition was amended, and the amendment alleged substantially the following: That in July, 1872, said Mary A. Wallace was married to J. H. Wallace, and lived with him as wife until December 16, 1884, when he departed this life; that during that time there were born to them said J. R., C. B., and W. B. Wallace, who were the sole issue of said marriage surviving at the death of J. H. Wallace; that on December 15, 1884, the defendants wrongfully and unlawfully, with the intent so to do, did in Tarrant County, Texas, assault, shoot, kill, and murder the said J. H. Wallace, without legal excuse, cause, or justification therefor, and not in their necessary self-defense, and without any reasonable apprehension of danger to themselves or either of them, and while the said J. H. Wallace was retreating from them and pleading for his life, and that from the wounds then and there wrongfully and unlawfully inflicted upon him by said defendants, he, the said J. H. Wallace, died on December 16, 1884; that at and before his unlawful killing, J. H. Wallace was about 40 years of

age, of sound constitution and in good health, and with every prospect of a long and useful life; that he was an affectionate husband and father; that he did then and had for many years abundantly provided for all the wants of plaintiffs, cared for, and supported them. That he was a reputable and experienced physician of skill and ability, and then had a large and lucrative practice, which was then and had for many years yielded him $5000 per annum, and which was increasing; and that by the killing of said J. H. Wallace by defendants, plaintiffs were damaged in the sum of $40,000, they and each of them being by such killing deprived of the care, love, and attention of their husband and father, of the support and maintenance they were receiving from him, and of their interest and just share in his earnings and value of his services. The petition concludes with a prayer for damages in the sum of $40,000, and for its apportionment among plaintiffs, with costs.

On December 8, 1890, defendants filed an amended answer, embracing a general demurrer, general denial, and special plea. The first special plea alleges, that if defendants, or either of them, killed said J. H. Wallace, said killing was justifiable under the law, because prior to the date of the killing said Wallace had seriously threatened to take the life of the defendants, which threats had been communicated to them prior to the killing; and at the time of said killing, from the acts and words of said Wallace, both of the defendants had reasonable grounds to believe, and did believe, that it was his intent and purpose to execute his threats upon both defendants immediately.

The next special plea alleges, that if defendants, or either of them, ever killed said Wallace, the killing was justifiable under the law, because at the time of the killing it reasonably appeared by the words, coupled with the acts, of said Wallace, that it was the purpose and intent of said Wallace to kill or inflict serious bodily injury upon defendants, and that the killing took place while said Wallace was attempting to commit said offense, and after the acts of said Wallace, showing evidently an intention to commit said offense.

On November 29, 1892, the case was tried before a jury, who gave a verdict for plaintiffs against J. T. Stephens for $1500, apportioned by the jury as follows: To Mary A. Wallace $600, to J. R. Wallace $300, to W. B. Wallace $300, to C. B. Wallace $300; and the jury found in favor of L. H. Stephens against plaintiffs. The court rendered judgment according to the verdict. J. T. Stephens alone appeals.

The facts proved and the verdict and judgment therein justify the following conclusions: That appellees Mary A. Wallace is the surviving wife, and J. R. Wallace, C. B. Wallace, and W. B. Wallace are the minor children of Dr. J. H. Wallace, deceased.

That Dr. J. H. Wallace and Dr. J. T. Stephens had formerly been partners, but had dissolved their partnership some years before the difficulty, and were not on speaking terms. That on the morning of December 15, 1884, they met in Sargent's drugstore, in Mansfield, on

the west side of Main street, opposite their respective offices. The street is 100 feet wide. They were both armed with pistols, and hot words passed between them. Dr. J. T. Stephens went to the prescription stand, leaving Dr. Wallace sitting in a chair in front of the fireplace, where he remained a few moments, and then started to leave the house, when he encountered L. H. Stephens, who was the father of Dr. J. T. Stephens. An altercation ensued between L. H. Stephens and Dr. Wallace, in which the former drew a knife and attempted to cut Dr. Wallace, and he drew a pistol and shot L. H. Stephens. Dr. Wallace then ran across the street, first in the direction of his office, and then in the direction of his home. Dr. J. T. Stephens ran out of the drugstore and pursued Dr. Wallace, shooting as he ran, and when Wallace had run forty-five or fifty yards he was shot down by Dr. J. T. Stephens and killed. At the time of such killing Dr. Wallace was making no effort to inflict death or serious bodily harm on either L. H. Stephens or Dr. J. T. Stephens, but was fleeing from the place and seeking his own safety. The killing, under the circumstances, was not justifiable, but was illegal and wrongful, and Dr. J. T. Stephens is responsible to appellees, and each of them, for damages therefor, and they have been damaged by such illegal and wrongful act to the full amount found by the verdict of the jury.

1. Appellant's sixth assignment of error, the first presented for our consideration, is as follows: "The court erred in refusing to allow the defendants to introduce in evidence the answer of the witness L. W. Hamill to the ninth direct interrogatory propounded to him by plaintiffs, the same being contained in his deposition taken herein April 2, 1886, all of which is shown by defendant's bill of exceptions filed herein."

The deposition of L. W. Hamill was taken by plaintiffs, in which they propounded the following interrogatories: "Interrogatory 9. State whether or not you had any conversation with the defendants, or either of them, at any time before the difficulty. If yea, what was said, and by whom? Was anything said about Dr. Wallace? If yea, what was it, and by whom was it said, and where was it?"

To this the witness answered: "I was with L. H. Stephens on the Sunday before the difficulty occurred; was at his house, and spent the day with him. He said considerable about Dr. Wallace. He gave me an account of the origin of the difficulty between Dr. Wallace and Dr. Stephens. He said that Dr. Wallace had accused him of cow-stealing, and that he (Stephens) was going to Fort Worth the next day; that he had written to his son, John Stephens, to meet him there; that he was going to carry his papers with him, meaning bills of sale of all the cattle he had bought, and that he intended to consult a lawyer, and that he intended to make Dr. Wallace prove that he did steal the cattle, or that he (L. H. Stephens) would prove that Wallace had lied. That he wanted to vindicate his character before the people." This evidence was offered by defendants and objected to by plaintiffs,

on the ground that the same was hearsay, immaterial, and irrelevant, and was the self-serving declarations of one of the defendants. The objection was sustained and the evidence excluded, to which ruling defendants took a bill of exceptions, and the question of its admissibility is properly presented to this court.

L. H. Stephens is no longer a party, and it will only be necessary to consider the testimony in so far as it affects the appellant, Dr. Stephens. The declarations did not in any manner affect Dr. Stephens, and it does not appear that he or Dr. Wallace ever heard of them or were influenced or affected in any way whatever by them, or that the introduction of such testimony would have tended to elucidate any question at issue, in so far as the action of Dr. Stephens at the time of the difficulty was concerned. To give the declarations their full force, the effect would only have been to show that L. H. Stephens had had a quarrel and perhaps a lawsuit with Dr. Wallace, which he intended to push in the courts with the view of vindicating his own character. It could have had no legitimate influence in relieving Dr. Stephens from the effects of his own acts at the time of the killing.

2. The only remaining assignment of error is as follows: "The court erred in that portion of its charge in which it instructed the jury, that if L. H. Stephens provoked a difficulty with J. W. Wallace with the intent to take the life of said Wallace, and if said Wallace resented said provocation, then the defendant J. T. Stephens could not justify the killing of said Wallace, because he believed his father was in danger of losing his life or of suffering serious bodily harm at the hands of said Wallace."

The above excerpt is not a full statement of the charge of the court upon the point mentioned. The charge, taken as a whole, properly submits the issues involved, and presents the case as favorably for Dr. J. T. Stephens as the facts would justify. That portion of the charge bearing upon the question presented is as follows:

"The court further instructs you, that if you believe from the evidence that L. H. Stephens and the deceased, J. H. Wallace, had a difficulty, and that said Wallace shot said Stephens, and that after so doing, he, said Wallace, fled from the place of the conflict and had quit the fight; and shall further believe from the evidence that after said shot was fired by said Wallace, and while he was leaving the place of the difficulty and had quit the fight (if you believe he had done so), that J. T. Stephens shot and killed said Wallace; and shall further believe from the evidence, that at the time J. T. Stephens did so there was no reasonable appearance of danger as the same then reasonably appeared to him, from all the facts and circumstance then known to him that neither he nor his father were in danger of losing his life or suffering serious bodily harm at the hands of said Wallace, viewed from his standpoint, then you are instructed that the killing would be illegal and wrongful, and if you so believe from the evidence, then you will find for the plaintiffs, and you will assess the

damages, under the instructions hereinafter given you, at such sum as you, under the evidence, may believe that they are entitled to recover, if any.

"You are further instructed, that if you believe from the evidence that there was a difficulty between the defendant L. H. Stephens and the deceased, J. H. Wallace, and that said Wallace shot said L. H Stephens, and shall further believe that J. T. Stephens interfered into said difficulty for the purpose of defending his father, L. H. Stephens, or himself, from any danger or reasonable appearance of danger at the hands of said Wallace, as the same then reasonably appeared to him, said J. T. Stephens; and shall further believe from the evidence that when he so interfered, if he did so do, it reasonably appeared to him, said J. T. Stephens, from the acts of said Wallace, or from his words coupled with his acts, if any, at the time, that he was then in danger or apparent danger of losing his life, or that his father was then in danger of losing his life, or that they or either one of them was in danger of suffering serious bodily harm at the hands of said Wallace, and acting under such reasonable apprehension of danger, as it then reasonably appeared to him, he fired the fatal shot that took the life of the said Wallace, for the purpose of defending himself or his father from such danger or apparent danger, if any, as it then appeared to him, said J. T. Stephens, then you will find for the defendants, and so say in your verdict.

"It is not necessary that defendants, or either of them, should have been in actual danger to justify the killing, but if the acts of the party killed were such at the time of the killing as to make it reasonably appear that he was about to take the life of his adversary, or to inflict serious bodily harm, and the killing done to protect one from such appearance of danger would be justifiable. If L. H. Stephens sought an interview with J. H. Wallace for the purpose of provoking a difficulty with said Wallace, with the intention of taking the life of said Wallace, provided said Wallace should resent such provocation, and if he used language calculated to provoke a difficulty, and the same did provoke said Wallace to make an assault upon said L. H. Stephens, then said L. H. Stephens would not have the right to take the life of said J H. Wallace in order to defend himself from such assault; and if J T. Stephens had heard the controversy and knew all the facts surrounding said difficulty, if any, and then interposed to defend L. H. Stephens from such assault, and in so doing, if he did so, shot and killed said Wallace, then said killing would be wrongful and unlawful; and if you believe from the evidence that said L. H. Stephens did provoke a difficulty with said Wallace for the purpose above stated, and used language of such character as was reasonably calculated to provoke a difficulty, and the same did provoke said Wallace to make an assault upon said L. H. Stephens; and shall further believe from the evidence that J. T. Stephens interfered in said difficulty so provoked, if any, for the purpose of defending L. H.

Stephens from such assault, if any, and then and there shot and killed said Wallace in defense of said L. H. Stephens, knowing at the time that L. H. Stephens had provoked the difficulty as before explained, then you will find for the plaintiffs, and assess the damage, if any, under the evidence and the instructions hereinafter given. But if you believe from the evidence that L. H. Stephens had heard that J. H. Wallace had called him, said Stephens, a cattle-thief, then he had the right in a peaceable manner to inquire of said Wallace whether he had made such statements, and the fact that he did so do would not justify said Wallace in making an assault upon L. H. Stephens, and if he did do so, said L. H. Stephens would have the right to defend himself from such assault, and if it appeared to him at the time that his life was in danger, or if it appeared to J. T. Stephens at the time he fired the fatal shot, if he did so do, that said L. H. Stephens was in danger of losing his life, or that he, J. T. Stephens, was in danger of losing his life, or that they, or either of them, were in danger of suffering serious bodily injury at the hands of said Wallace, then he would have the right to defend himself or said L. H. Stephens from such danger, or apparent danger, as the same under the circumstances reasonably appeared to him, J. T. Stephens; and if he began to shoot as a means of defense, then he had the right to continue to shoot, and even to pursue said Wallace, until the danger or apparent danger, as it reasonably appeared to him under the circumstances then surrounding him, no longer existed; and if you believe he fired the fatal shot as a means of defense, as explained in this paragraph, then you will find for the defendants, and so say by your verdict."

The evidence tended to show that L. H. Stephens purposely brought on the difficulty and drew a deadly weapon upon Wallace, intending to kill him. The facts clearly show that Dr. J. T. Stephens ran after, shot, and killed Dr. Wallace after he had fled from the place of the difficulty, and was still fleeing for his life, when neither Dr. Stephens or his father, L. H. Stephens, was in any danger whatever from Wallace.

The judgment is amply supported by the evidence. We find no error in the proceedings, and the judgment is affirmed.

*Affirmed.*

Delivered February 13, 1895.

Writ of error refused.